Ruffin, C. 3.
 

 As the charter to the defendants exempts the citizens of Buncombe from the payment of tolls, and the jury have found the plaintiffs to have been citizens of that county during, the whole period involved in this controversy,-the plaintiffs were not liable for the sums they paid.
 

 It was, however, objected on the trial, that, although the money was not doe to the company, the plaintiffs could not recover it back, because they had paid-it without suit, and voluntarily.- But this objection the counsel very properly abandoned here. The payment was- not voluntary, that is,as payment of a debt admitted to be due and willingly-made ; but it was made as a means of obtaining a passage on the road for the mail, which the plaintiffs were obliged to carry,, and of keeping their property from- being taken from
 
 *376
 
 them by distress ; and so was compulsory, and without con-^deration.
 
 Snowden v Davis,
 
 1 Taunt. 359.
 

 The remaining objection is, that there was po evidence to be left to the jury, that the plaintiffs had paid, the tolls between the
 
 22d
 
 of September, 1834, and the 1st of September, 1835. But vye think, although there was no direct testimony of the collector, who received the money for that period, as there was in relation to the time between the 1st of September, 1835, and September, 1837, yet there were good circumstances, tending to establish the payment to the satisfaction of any reasonable mind, and indeed, all, that, in the actual state of the case, could be expected from the plaintiffs. The defendants’ collector for that time was dead, and it'did not appear that any accounts were
 
 kept of the persons
 
 from whom tolls were received. It could not be expected that the collector would give a receipt for every daily toll, nor that the plaintiffs would have a witness by to prove such payments. But, to supply the want of such direct evidence, it was proved, that shortly before the commencement of the particular period, the collector, now dead, did collect toll from the plaintiffs, and gave them notice that he was ordered to demand toll every time the coach passed, and that he should do so. Then, to enforce that, without the necessity of suing for the tolls, and, perhaps, from a doubt of the power to distrain and detain the coach with the mail, the stockholders, a few days afterwards, on the 6th of October, 1834, in general meeting, passed a resolution, that the directors should have the gates on the road closed against the plaintiffs ; which must be understood to be, unless they paid the tolls. Then, again, it appeared, that, notwithstanding the warning from the gate keeper and the resolution of the stockholders, the plaintiffs continued to pass six times a week through the period specified; and. .that, immediately thereafter, upon the first coming
 
 in of
 
 a new gate keeper, the collection of the tolls was taken up by him, as a thing of course, and according to an established practice; can it be doubted that the directors and inferior servants of the company complied with the orders given them, and especially,
 
 *377
 
 that in obedience to the resol ufion of the stockholders, the gates were closed, as a means of compelling prompt pay-meats from the plaintiffs? At all events, it was evidence to the jury, to be weighed by them in connexion with the other circumstances,' and seems fully sufficient. The plaintiffs could not go further back than the 22d September, 1834, to which the court'restricted them, because the writ was issued on the 22d of September, 1837, and the defendants pleaded the statute of limitatations.
 

 Per Curiam. Judgment affirmed.